## CHARLES W. CARTWRIGHT & another *vs.* FERDINAND CLARK.

As a general rule, a cross bill must be filed before publication of the evidence in the original suit, unless the plaintiff in the cross bill will go to the hearing upon the proofs already published : The court may, however, allow a cross bill to be filed after publication, and even after a hearing of the cause, if it appear, on the hearing, that such bill is necessary to a complete and equitable decree in the original suit; but the proceedings in the original cause are not thereupon to be delayed, except upon the special order of the court founded upon notice, given to the plaintiff in the original suit, of the application for delay.

A cross bill, if seasonably filed, may be sustained for the purpose of obtaining an equitable set-off; and as such bill is considered as a defence to the original suit, it is not necessary that the plaintiff should show any ground of equity, as against the plaintiff in the original bill, in order to support the jurisdiction of the court.

A., an insolvent debtor in Boston, assigned all his property to B., including two ships at sea, for the benefit of his creditors ᛁ C., an inhabitant of Cuba, filed a bill in equity, in this court, against B. for a specific performance of an agreement made by A., to convey a moiety of one of said ships to C., and to account to him for a moiety of her earnings, &c. After publication of the evidence and a hearing in that cause, and after the court had settled the principles upon which a decree should be rendered for C., B. filed a bill against C., alleging that he had wrongfully taken possession, at Cuba, of the other ship that was conveyed to B. by A., and had employed her in several foreign voyages, and had resisted the attempts of B. to obtain possession of her, thereby causing great expense, &c. to B.; and praying that B. might make discovery, &c. and be compelled to account for the earnings of said ship, and be held to pay said expense, &c., and that so much thereof, as might be necessary to satisfy the sum which C. might recover of B. in the original suit, might be set off against said sum ; and also that C might be enjoined, until further order of the court, from suing out execution, in said original suit, upon any decree therein. *Held,* that this bill, considered as an original bill, could not be sustained, either for the purpose of discovery or relief; the court having no jurisdiction of the matter thereof, nor of the person of C. *Held also,* that the bill could not be sustained as a cross bill, because it was filed too late ; and that the final decree in the original suit of C. against B. ought not to be delayed to abide the proceedings on the cross bill.

THIS was a bill in equity, of which the following is an abstract : That by an indenture, dated February 8th 1834, by and between J. P. Flint, J. C. Flint and S. G. Hill, partners, of the first part, the plaintiffs, of the second part, and certain creditors of said Flints & Hill, of the third part, said Flints & Hill conveyed all their property and effects to the plaintiffs, and among other things a certain brig, called the Charles, and a certain barque, called the Leopard, in trust for the benefit of creditors : That the plaintiffs accepted the trust. and were pro-

ceeding to sell the brig Charles, when the defendant, who is a merchant in Havanna, in the island of Cuba, on the 3d of May 1834, exhibited his bill in equity against the plaintiffs, in this court, and stated therein, among other things, that he was entitled to a moiety of said brig, and to have a conveyance thereof, and praying, among other things, that a conveyance might be made to him, and that an account might be rendered of the earnings of said brig, from February 4th 1834, and one half thereof paid to him ; which bill is still pending in this court : (See 22 Pick. 231.)    That on the 8th of February 1834, said barque Leopard was bound on a voyage from Montevideo to Havanna, consigned by the owners (said Flints & Hill) to the defendant, to hold subject to their order and disposition, laden with a cargo consigned to the defendant, for sale, belonging to the plaintiffs :    That in June 1834, the barque arrived at Havanna, and the defendant took possession thereof, under the consignment, subject to the order of the owners :    That the defendant, contrary to the implied agreement, and to the express orders of the plaintiffs, employed the barque in divers voyages on his own account, from June 1834 to January 1837, and received, from the profits and earnings thereof, a large sum of money :    That the plaintiffs, through their agent, in December 1835, on the arrival of the barque at Montevideo from a foreign voyage in which the defendant had employed her, endeavored to obtain possession of said barque, having previously, soon after the execution of the indenture abovementioned, applied, through their agent, and requested the defendant to deliver the barque to them ; which he at all times refused to do :    That the plaintiffs were greatly impeded in obtaining possession of the barque, by the wrongful doings of the defendant, who caused certain bottomry bonds, without consideration, but which falsely recited a consideration, to be made to him upon said barque, and a certain charter-party, without the authority of the plaintiffs, to be made by a person appointed by the defendant as master of the barque :    That when said bottomry bonds were made, the defendant had in his hands, as proceeds of the sale of the consigned cargo of the barque, more than sufficient to

pay all the charges, expenses and disbursements of said barque, and that said bottomry bonds were made in fraud of the rights of the plaintiffs, and for the sole purpose of retaining the barque and preventing the plaintiffs from obtaining possession : That the defendant and his agents instituted vexatious proceedings, in the courts of law at Montevideo, against the agent of the plaintiffs who was employed to obtain possession of the barque, whereby the plaintiffs were put to great charges, viz. $ 5350, in defending against them, and in keeping the barque during the controversy ; which charges the plaintiffs were obliged to pay, and did pay : That the plaintiffs were kept from possession of said barque from June 1834 to January 1837, and she became greatly deteriorated, and they were obliged to expend large sums, after they obtained possession, to render her fit to return to the United States : That the plaintiffs are entitled to the earnings of the barque, whilst she was held by the defendant, as aforesaid, and to an account thereof from him, and to a reimbursement of all charges and expenses incurred in defending against said proceedings, and in obtaining possession and refitting said barque to return to the United States ; and to be compensated for the detention thereof, and to be indemnified for all damages sustained by the wrongful acts of the defendant : That the defendant is an inhabitant of Havanna, and cannot be found within the jurisdiction of this court to be served with process ; but that it appears of record that he has an attorney and solicitor in his aforesaid suit in equity pending in this court against the plaintiffs : That the plaintiffs have no adequate means of satisfying their just demands aforesaid against the defendant, except so far as said demands may be allowed as a set-off against what, if any thing, may be decreed to be paid to the defendant in his said suit against them : That the sum, which the plaintiffs are entitled to recover of the defendant, greatly exceeds the whole amount which the defendant claims in his said suit ; and that in equity and good conscience, as well as by the law, so much thereof, as may be necessary to satisfy what the defendant may recover in his said suit, ought to be set off against it — all which would more fully appear, if the defendant would disclose the truth concerning the same.

The bill concluded with a prayer, that the defendant and his confederates might answer divers questions set forth, and state an account of the earnings of said barque while in his employ ; of all profit and advantage derived therefrom ; and the sums expended by the plaintiffs and damage sustained ; and that the plaintiffs be decreed entitled thereto, and that so much thereof, as might be necessary to satisfy what the defendant might recover of the plaintiffs, in his said suit, might be set off against it : Also that the defendant might be enjoined, until further order of the court, from suing out execution in his said suit, upon any decree therein ; and for such other and further relief as the nature and circumstances of the case might require.

This bill was filed on the first Monday of July 1840, and the defendant, by his attorney of record in the original suit, demurred thereto :  1st. Because the court had no jurisdiction. 2d. Because the bill did not state a case which entitled the plaintiffs to any discovery or relief ; and because no discovery which the defendant could make, respecting the matters complained of in the bill, could avail the plaintiffs for any of the purposes for which a discovery is sought, nor entitle them to any relief in this court, as a court of equity, touching any matter contained in the bill.  3d. Because the plaintiffs, if the allegations in their bill are true, have a plain, adequate and complete remedy at the common law.  4th. Because the bill, on the face of it, is a cross bill, and as such ought to be confined to the matters in controversy in the original bill, wherein the defendant is plaintiff, and the plaintiffs are defendants.  5th. Because, although the bill is, on the face of it, a cross bill, and ought to have been filed before publication of the evidence in the suit therein mentioned, yet it was not filed till long after publication of the evidence in that suit, and not till the matters in controversy in that suit were decided by the court, except *what was the amount* of half the earnings and half the value of the brig Charles, i. e. *for what sum* a decree should be made against the defendants in that suit, who are plaintiffs in this.

The *facts* averred in the fifth cause of demurrer appeared of record in the original suit.

*Washburn,* for the defendant. The court has no jurisdiction of the bill, as an original bill, under Rev. Sts. *c.* 81, § 8. There is no trust in the matter, and if there were, yet on the allegations in the bill there was fraud in the origin of the trust In such cases a court of equity does not take cognizance. 3 Bl. Com. 431. 1 Story on Eq. § 434. The remedy is complete at law. Nor can the bill be maintained as a cross bill. Such bill is a defence to another suit; *Galatian* v. *Erwin,* 1 Hopk. 58 ; must be filed before publication has passed in the first suit; *Field* v. *Schieffelin,* 7 Johns. Ch. 252 ; Story Eq. Pl. § 395 ; and must relate to the former suit only. *White* v. *Buloid,* 2 Paige, 164. Story Eq. Pl. §§ 401, 631.

*B. Rand,* for the plaintiffs. On the original bill brought by the defendant, it was decided that he was entitled to a decree for a particular sum, to be computed by a master. The present bill alleges that the defendants in the other bill have a claim against the plaintiff in that bill (the defendant in this) for a larger sum ; and they are entitled to a set-off. *Piggott* v. *Williams,* Mad. & Geld. 95.

The defendant, though not an inhabitant of this State, is subject to the jurisdiction of this court in a cross bill in equity, as well as in a cross action at law, by virtue of Rev. Sts. *c.* 90, § 49. And one execution may be set off against another, in equity as at law. Rev. Sts. *c.* 97, §§ 74 – 76. And without reference to statutes, the present bill may be maintained on the general principles adopted by courts of equity. Story Eq. Pl. §§ 399, 628.

A few days after this case was argued, the court gave their opinion, and ordered that the · bill should be dismissed. The counsel for the plaintiffs thereupon moved for a rehearing, and the motion was granted. He afterwards cited the following additional authorities : *Doble* v. *Potman,* Hardr. 160. 1 Montagu Eq. Pl. 328, 329. 2 Mad. Ch. Pract. (3d ed.) 566. *Troup* v. *Haight,* 1 Hopk. 270. 1 Howard's Exch. Pract. Eq. Side, 294, 295, 297. *Latouche* v. *Lord Dunsany,* 1 Scho. & Lef. 149, 150. *Gardiner* v. *Mason,* 4 Bro. C. C. 478. *King of Spain* v. *Hullet,* 1 Clark & Fin. 333

WILDE, J. This case comes before us again on the petition of the plaintiffs' counsel for a rehearing — after a decretal order had passed dismissing the bill — on the suggestion that several authorities, not cited on the first argument, would fully sustain this bill as a cross bill.

We have looked into the cases and authorities cited on the second argument, but have found nothing in them inconsistent with the principles on which our former opinion was founded. We formerly decided that this bill, considered as an original bill, could not be sustained either for the purpose of relief or discovery, the court having no jurisdiction of the subject matter of the suit, nor of the person of the defendant : That the bill could not be sustained as a cross bill, because it was filed too late : That the final decree on the original bill of Clark against Cartwright ought not to be delayed to abide the proceedings on the cross bill; so that a set-off, which was sought·to be had by the latter bill, could not be attained. We also laid it down, as a general rule, that a cross bill ought to be filed before publication of the evidence in the original suit, unless the plaintiff in the cross bill will go to the hearing on the proofs already published ; Story Eq. Pl. § 395 ; but that although this was the general rule, the court, if the justice and equity of the case required it, would, on motion, allow a cross bill to be filed after the publication of the evidence, and even after a hearing of the cause, if it should thereupon appear that a cross bill is necessary to a complete and equitable decree in the original suit : But that unless this could be made to appear, a cross bill, filed after the hearing, and without leave of court, could not be sustained.

This decision seems to us to be well founded, and it is not opposed to any rule or principle of equity laid down in the authorities cited.

It is not denied, that a cross bill, if filed in season, may be sustained, for the purpose of obtaining an equitable set-off; and in such a case it is not necessary for the plaintiff to show any ground of equity, as against the plaintiff in the original bill, to support the jurisdiction of the court ; a cross bill being considered as a defence in the original suit. *Kemp* v. *Mackrell*, 3

Atk. 812. Mitf. Pl. (3d ed.) 64. Beames Eq. Pl. 303. To obtain the benefit of such a defence, the cross bill must, generally, be filed before the publication of the evidence, and before issue joined ; and if the defendant has a counter demand against the plaintiff, he should, regularly, insist on it in his answer.

But although a cross bill may be filed after issue joined, and even after a hearing, if the justice of the case requires it, yet the proceedings in the original cause are not to be delayed in any case, unless upon the special order of the court, founded upon notice of the application to the adverse party. These rules of practice are laid down by Howard, in his treatise on the Rules and Practice of the Equity Side of the Exchequer in Ireland, Vol. 1, p. 297, and they are referred to with approbation in the case of *White* v. *Buloid*, 2 Paige, 164. So it was laid down in *Noel* v. *King*, 2 Mad. R. 394, that in no case is the complainant in the original cause compelled to stay proceed-ings therein, without a special order of court for that purpose. The same rule is laid down in 1 Hoffm. Ch. Pract. 352, and in 2 Mad. Ch. Pract. 328. So in *Aylet* v. *Easy*, 2 Ves. sen. 336, it was ordered by Lord Hardwicke, as a rule of practice, that no cross bill should be filed, after the original cause had been proceeded in, unless on special motion with notice, " that the court might judge of it on the circumstances, and not of course ; for otherwise it would be easy to delay the hearing of a cause." These authorities fully sustain the decision of this cause at the former hearing.

The object of the bill is to obtain a set-off against the decree in the original cause, and this cannot be obtained without delay-ing that decree until a final hearing can be had on the cross bill Such a delay would be most unreasonable, and cannot be al lowed. Regularly, the defendant in the original cause should have insisted on his counter claim, in his answer, and should have brought his cross suit without delay ; so that both cases might have been proceeded in, *pari passu.* When a defendant in a common law action relies on a set-off, he must file his claim at the first term when the action is entered in court; and formerly it was required to be filed in the clerk's office, seven days

before the sitting of the court to which the action was brought. If the defendant fails so to do, and resorts to a cross action, with the intention of setting off any judgment he may obtain in such action, against the judgment which may be recovered against him in the first suit, he must commence his action with·out any unnecessary delay, or the court will not postpone the trial in the original cause to await the trial in the cross action.

In the present case, the original defendants are chargeable with great laches, if they intended to avail themselves of a set-off. The original cause had been pending five or six years before the cross bill was filed, and that bill also has been pending, for a year since. Under these circumstances, we think the plaintiff in the original suit ought not to be subjected to any further delay, and that the cross bill must stand dismissed.